Michell WILLIAMS

v.

Jo Anne B. BARNHART, Acting Commissioner of the Social Security Administration.

No. Civ.A. 04–1628.

United States District Court, E.D. Pennsylvania.

March 23, 2006.

Michael Patrick Boyle, Philadelphia, PA, for Plaintiff.

Eda Giusti, Social Security Administration, Nicholas R. Cerulli, U.S. Attorney's Office, Philadelphia, PA, for Defendant.

### MEMORANDUM OPINION AND ORDER

SAVAGE, District Judge.

In this appeal from a denial of Supplemental Security Income ("SSI") benefits, the claimant contends that the Administrative Law Judge's ("ALJ") finding that she was not disabled because she could perform jobs that exist in substantial numbers in the national economy is not supported by substantial evidence.[1] Specifically, the claimant argues that the ALJ failed to

comply with Social Security Ruling ("SSR") 00–4p when she did not inquire about and resolve conflicts between the vocational expert's ("VE") testimony and the job descriptions contained in the *Dictionary of Occupational Titles* ("DOT") listing the physical demands of the jobs the VE assumed she could perform. The Commissioner of the Social Security Administration ("Commissioner") counters that there was no conflict between the VE's testimony and the DOT; and, consequently, there was no need for clarification.

A review of the transcript reveals that the ALJ's hypotheticals and the VE's responses raised ambiguities about the claimant's functional limitations, and the VE's evidence presented apparent conflicts with the DOT that were not resolved. Because the ALJ relied on the VE's testimony to determine that the claimant was not disabled, I am unable to conclude that the ALJ's finding that there were jobs the claimant could perform was supported by substantial evidence. Therefore, I shall remand to the Commissioner for the taking of testimony of a vocational expert.

### Background

In her third application for SSI payments, the claimant, a 41 year-old female, claimed that bilateral wrist pain, tenosynovitis,[2] and an adjustment disorder with depressed mood had rendered her unable to work since May 12, 1999.[3] *Administrative Record* ("R.") at 19. She had previously worked as a telephone service representative, a community liaison, a cashier

---

1. The claimant raised a number of challenges to the ALJ's decision-making. Only this issue has merit. *See* discussion *infra* at 798.

2. Inflammation of a tendon and its enveloping sheath. STEDMAN'S MEDICAL DICTIONARY 1795 (27th ed.2000).

3. A prior application for SSI may be reopened when a new application is filed within one year of its denial. 20 C.F.R. § 416.1488(a). At the hearing to consider the current application, the ALJ granted the claimant's timely request to reopen her second application. Thus, the ALJ's decision pertains to the claimant's second and third applications.

and a customer service representative. R. at 21.

After a hearing at which the claimant was represented by counsel, the ALJ determined that she could not return to her past relevant work. R. at 32. However, relying on the testimony of a vocational expert, the ALJ found that there were a significant number of other jobs in the national economy that the claimant could perform. R. at 31–33. Accordingly, the ALJ concluded that the claimant was "not disabled." R. at 33.

The ALJ's decision became the final decision of the Commissioner after the Appeals Council declined to review it. The claimant then filed this action pursuant to 42 U.S.C. 405(g), challenging the Commissioner's decision. After the parties filed cross motions for summary judgment, this matter was referred to a magistrate judge who recommended granting the Commissioner's motion and affirming the denial of benefits. The claimant has filed objections to the magistrate judge's Report & Recommendation.

In her motion, the claimant argues that the ALJ should have assessed the effect of her obesity, recontacted her treating psychiatrist, and conducted a thorough inquiry into the stresses involved in the jobs identified by the VE. She also contends that the ALJ erred in finding that she had the residual functional capacity to perform light work and that her statements concerning her impairments were not totally credible. Lastly, she claims the ALJ failed to explain conflicts between the VE and the DOT's job descriptions as mandated by SSR 00–4p.

I do not agree with the magistrate judge's conclusions that the ALJ's hypothetical posed to the VE was clear, and the VE's testimony was consistent with the ALJ's hypothesis regarding the claimant's ability to use her hands and with the DOT.

Instead, I conclude that there were ambiguities in the ALJ's hypotheticals and unexplained conflicts between the VE's job descriptions and those found in the DOT, specifically with respect to the physical, skill level and strength demands of the jobs that the VE concluded the claimant could perform. In all other aspects, I agree with the magistrate judge's report and recommendation.

### ALJ Findings

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since April 16, 2002.

2. The medical evidence establishes that the claimant suffers from bilateral wrist pain, tenosynovitis, and an adjustment disorder with depressed mood, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (20 CFR § 416.921).

3. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

4. The claimant retains the capacity to perform light work, diminished by significant additional limitations as: she should avoid constant and repetitive grasping and fine manipulation; she can perform frequent postural activity except for only occasional crawling or climbing ladders or ropes; and, she has sufficient attention and concentration to understand, remember and follow simple instructions.

5. The claimant's impairments prevent her from performing her past relevant work as a telephone service

representative, a community liaison, a cashier, and a customer service representative.

6. The claimant is a 'younger individual, age 18–44' and has an Associate's Degree from college (20 CFR § 416.963, 416.964, and 416.965).

7. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical–Vocational Rule 202.22 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform as cited in the body of this decision.

8. A finding of "not disabled" may be reached within the framework of the above-mentioned rules.

9. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(f)).

R. at 32–33.

## Standard of Review

 A reviewing court is bound by an administrative law judge's findings if they are supported by substantial evidence in the record. *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citations omitted). The court has no fact finding role in evaluating the administrative record and may not weigh the evidence or substitute its own conclusion for that of the ALJ. *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir.1992).

## Disability

Disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to demonstrate eligibility for disability benefits, the claimant must demonstrate that she has not been involved in gainful activity and that she has a severe medical impairment which prevents her from performing past work or any other substantial gainful work which exists in the national economy. *Plummer,* 186 F.3d at 428; *see* 20 C.F.R. § 416.920.

A five-step sequential process governs the inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). At step one, the claimant must demonstrate that she is not engaged in substantial gainful activity. *Plummer,* 186 F.3d at 428. At step two, she must show that she has a medically severe impairment or a combination of impairments. *Id.* At the third step, a determination is made whether the impairment is one of a number of listed impairments that the Commissioner has already decided are so severe that they conclusively render a claimant disabled.[4] *Id.* If the claimant's impairment equals one of the listed impairments, she is found disabled. If it does not, the inquiry proceeds to step four where the claimant must show that the impairment prevents the performance of her past relevant work. *Id.* Once the claimant has established that she cannot return to her customary occupation, the burden shifts to the Commissioner, who, at the fifth step, must prove that the claimant can still engage in sub-

---

4. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 (listing the impairments).

stantial gainful activity. The Commissioner satisfies this burden by demonstrating that given the claimant's age, education and work experience, she can perform specific jobs that exist in the national economy. *Podedworny v. Harris,* 745 F.2d 210, 217 (3d Cir.1984).

At the fifth step, the ALJ must make factual findings regarding age, education, prior work experience and residual functional capacity.[5] *Boone v. Barnhart,* 353 F.3d 203, 205–06 (3d Cir.2003). In order to determine whether there are specific jobs that a claimant can perform, the ALJ often solicits advisory testimony of a vocational expert. *Burns v. Barnhart,* 312 F.3d 113, 119 (3d Cir.2002). The ALJ may also consult the DOT, a United States Department of Labor publication that describes the requirements for thousands of jobs that exist in the national economy.[6] *Id.*

### Social Security Ruling 00–4p

SSR 00–4p[7] prescribes guidelines for treating VE occupational testimony in conjunction with the information contained in the DOT.[8] The ruling imposes upon an ALJ an "affirmative responsibility" to identify and obtain a reasonable explanation of any conflicts between a VE's testimony regarding the requirements of a specific job and the information provided in the DOT, which, with the companion publication *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"),[9] is the primary source of job requirements relied upon in making disability determinations. SSR 00–4p, 2000 WL 1898704, at *2, *4; *see also Rutherford v. Barnhart,* 399 F.3d 546, 557 (3d Cir.2005) (recognizing that SSR 00–4p's scope is limited to expert testimony concerning the actual requirements of a job.) The language of the ruling is mandatory, not discretionary. SSR 00–4p, 2000 WL 1898704, at *4.

 When an apparent conflict arises, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE's testimony to support a decision that the claimant is not disabled. *Id.* The explanation must be on the record and the ALJ must explain how the conflict was resolved.[10] *Burns,* 312 F.3d at 127. How-

---

5. Residual functional capacity is the level of work a claimant can perform despite the limitations caused by her impairments. *Fargnoli v. Massanari,* 247 F.3d 34, 40 (3d Cir.2001).

6. The "Social Security Administration has taken administrative notice of the reliability of job information contained in the [DOT]." *Burns,* at 126 (citing 20 C.F.R. § 416.966(d) (2002)).

7. *Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions,* SSR 00–4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).

8. Social Security Rulings are published under the Commissioner's authority and are binding on the Social Security Administration. *Sullivan v. Zebley,* 493 U.S. 521, 531 n. 9, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

9. The SCO, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993), is a companion book to the DOT. SSR 00–4p, 2000 WL 1898704, at *2. These publications are used at steps four and five if the sequential evaluation process. *Id.*

10. "The Responsibility To Ask About Conflicts. When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will

ever, an unexplained inconsistency between the VE's testimony and the DOT is not *per se* fatal to the ALJ's determination so long as substantial evidence exists in the record to support the ALJ's finding. *Rutherford,* 399 F.3d at 557 (internal citations omitted). Thus, despite an unresolved conflict, the ALJ's decision will be affirmed if there is substantial evidence to support it.

### Meaning of "Repetitive" in the ALJ's Hypothetical

The SCO details the physical demands of each listed job. Reaching, handling, and fingering are among the physical demands that require the use of one's hands and arms.[11] SCO, App. C at C–3. These physical demands are categorized, reflecting the frequency of use required, as either Not Present (N), Occasional (O), Frequent (F), or Constant (C).[12] *Id.* Repetitive is not one of the frequency categories listed in the DOT.

---

obtain a reasonable explanation for the apparent conflict." SSR 00–4p, 2000 WL 1898704, at *3–4.

**11.** They are defined as follows:

**Reaching**—"Extending hand(s) and arm(s) in any direction."
**Handling**—"Seizing, holding, grasping, turning, or otherwise working with hand or hands. Fingers are involved only to the extent that they are an extension of the hand, such as to turn a switch or shift automobile gears."
**Fingering**—"Picking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling."
SCO, App. C at C–3.

**12.** The frequency categories are defined as follows:

Not Present (N) - "Activity or condition does not exist."
Occasionally (O) - "Activity or condition exists up to 1/3 of the time."
Frequently (F) - "Activity or conditions exists from 1/3 to 2/3 of the time."

The claimant contends that the ALJ's use of the word repetitive in her hypothetical to the VE and in the VE's subsequent responses raised a conflict that required an explanation.[13] The ALJ asked the VE to assume:

> [T]his individual could do light exertional work,[14] however the individual would not be able to use her hands. Well, there shouldn't be **repetitive or continuous use of the hands** ... and ... the individual would have sufficient attention and concentration to understand, remember, and follow simple instructions. (emphasis added) R. at 54–55.

The claimant argues that repetitive means frequent. In the DOT, frequent falls between occasional and constant. SCO, App. C at C–3. The Commissioner assumes, without citing any evidence in the record, that both the ALJ and the VE understood repetitive to be continuous.[15] A conclusion

---

Constantly (C) - "Activity or condition exists 2/3 or more of the time."
SCO, App. C at C–3.

**13.** The use of the word "continuous" in the hypothetical does not create an ambiguity because "continuous" is synonymous with "constant" which is one of the DOT's frequency categories. Thus, if the claimant was precluded from "continuous" use of her hands, she could not perform any jobs requiring "constant" reaching, handling or fingering.

**14.** The Social Security regulations classify jobs according to the physical exertion that they require, 20 C.F.R. § 416.967. This classification, referred to as the strength or physical exertion requirement, can be found in the SCO. *Id.;* SCO, App. C at C–1 to C–2. There are five possible Strength Level ratings: Sedentary, Light, Medium, Heavy and Very Heavy. 20 C.F.R. § 416.967.

**15.** [I]t is clear that in her hypothetical question to the vocational expert [the ALJ] was asking the vocational expert to "assume that Plaintiff could not constantly, but could frequently, use her hands...." *Def.'s Br. In*

that the ALJ meant repetitive to be synonymous with continuous or frequent rests on speculation and conjecture. The language used by the ALJ in her decision suggests that repetitive refers to doing the same function repeatedly, and continuous connotes doing one or more functions without interruption.

In assessing the claimant's residual functional capacity, the ALJ concluded that the claimant's past work required her to perform "constant repetitive motions," functions that she determined the claimant should avoid. R. at 24, 29. Similarly, the ALJ noted that in an earlier worker's compensation case, it had been determined that the claimant could not return to a job which required "constant repetitive keyboarding." [16] R. at 28. The ALJ also found that the claimant should avoid "constant and repetitive grasping and fine manipulation." R. at 32.

Had the ALJ meant to equate repetitive with continuous or constant, it is unlikely she would have consistently used those terms together because, if she meant them to be synonymous, it would have been redundant. Using these words repeatedly in conjunction with each other demonstrates that each was meant to characterize a different quality relating to hand use and not gradients of the same attribute. Similarly, if repetitive and frequent were intended as synonymous, as the claimant contends, then the ALJ's repeated use of constant and continuous simply confuses the issue.

Based on the record, one cannot discern what the ALJ actually meant. Nor could the VE have known what she meant. Nor can one conclude what the VE understood her to have meant.

The VE appeared to understand repetitive to mean frequent. When asked if the individual described in the ALJ's hypothetical could perform the claimant's past relevant work, the VE opined that she could not because "the use of hands would be repetitive in the telephone service representative positions." R. at 55. Yet, the job "Telephone Solicitor (any industry)," [17] which is the occupation that most closely resembles the telephone service representative position described by the VE, is not described by the SCO as requiring repetitive hand use. This position requires only occasional reaching and handling, but also requires frequent fingering. SCO, at 355. Thus, the fact that the VE eliminated this job because it entailed repetitive use of hands implies that she equated frequent with repetitive.

Indeed, the Third Circuit has acknowledged that a limitation on repetitive hand movement may preclude jobs involving frequent reaching, handling and fingering. *Boone*, 353 F.3d at 207. [18] Consequently, there is a basis for the claimant's argument that frequent and repetitive are interchangeable. However, based on the record, frequent is not the only possible meaning of repetitive, nor can any one be certain that it is what the ALJ and VE meant.

*Opp'n to Pl.'s Mot for SJ and in Supp. of Def.'s Mot. for SJ* at 13–14.

16. Similarly, the claimant's treating orthopedic surgeon, Dr. Ronald Greene, noted that her functional capacity evaluation cleared her for sedentary work without "repetitive or continuous use of the right or left wrist or hands." R. at 195.

17. DOT code 299.357–014. SCO, at 355.

18. *Webster's Dictionary* defines "frequent" as "happening at short intervals: often repeated or occurring." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY ELEVENTH EDITION 500 (2005). Thus, the dictionary definition links "frequent" with repetition as well.

## The Vocational Expert's Testimony and the Dictionary of Occupational Titles

If the VE did equate repetitive and frequent, there are conflicts between her testimony and the DOT. In response to the first hypothetical proffered by the ALJ, the VE testified that even though the claimant could not perform her past relevant work, there were other jobs in the national economy that she could perform, namely, hospital television rental clerk, general office worker, and information clerk. R. at 55. The VE testified that all of these positions had an SVP 2 [19] and were at the light exertional level. *Id.* According to the DOT, these positions all require some sort of frequent hand motion. "Hospital TV Rental Clerk" [20] has an SVP 2 and requires frequent reaching handling and fingering. SCO, at 365. Furthermore, the DOT lists two similar information clerk positions: "Information Clerk (motor trans.; r.r. trans.; water trans.)" [21] and "Information Clerk (clerical)." [22] The former is similar to the one described by the VE because it has an SVP 2 and is considered light work, requiring frequent reaching and handling but only occasional fingering. SCO, at 336. The latter differs because it is a sedentary position with an SVP 4, at the semi-skilled work level; however, it requires only "occasional

reaching and handling and no fingering". *Id.* Finally, "Office Helper" [23] is most similar to the general office worker position the VE described. It has an SVP 2 and requires frequent reaching, handling and fingering. SCO, at 348. Hence, all of the jobs suggested by the VE actually require some "frequent" hand movement.

In response to the second hypothetical which limited the claimant to sedentary work rather than light exertional work as assumed in the first hypothetical, the VE opined that the claimant could perform the jobs of storage rental clerk, cafeteria cashier and information clerk, all SVP 2 jobs. R. at 55–56. Although the ALJ specifically limited the claimant to sedentary positions in this hypothetical, two of the three positions that the VE listed require light, not sedentary, work. The strength level for the "Storage–Facility Rental Clerk" [24] position is light, not sedentary. SCO, at 365. The "Cashier II" [25] position, also referred to as "Cafeteria Cashier" in the DOT, is classified as light and requires frequent reaching, handling and fingering. SCO, at 333. "Information Clerk" [26] is sedentary, but it has an SVP 4, not an SVP 2, as the VE had indicated. SCO, at 336. The VE did not identify or explain these conflicts. Nor was she asked to do so.

---

**19.** The DOT lists an SVP time for each occupation. SVP, "Specific Vocational Preparation," is the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." SCO, App. B at B–1. Unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9. 65 FR 75759, 2000 WL 1765299, at *75760.

**20.** "Hospital TV Rental Clerk (business ser.)" DOT code 295.467–018. SCO, at 365.

**21.** DOT code 237.367–018. SCO, at 336.

**22.** DOT code 237.367–022. SCO, at 336.

**23.** "Office Helper (clerical)" DOT code 239.567–010. SCO, at 348.

**24.** "Storage–Facility Rental Clerk (business ser.; retail trade)" DOT code 295.367–026. SCO, at 365.

**25.** "Cashier II (clerical)" DOT code 211.462–010. SCO, at 333.

**26.** "Information Clerk (clerical)" DOT code 237.367–022. SCO, at 336.

The ALJ then asked whether there were jobs at the light or sedentary level that the claimant could perform if she was limited to occasional use of her dominant right hand. R. at 56. In response, the VE identified paramutual ticket checker, potato-chip sorter, residential cleaner and counter attendant as jobs the claimant could do. R. at 31, 56–57.

According to the SCO, "Cleaner, Housekeeping" [27] requires frequent reaching and handling, and "Potato–Chip Sorter" [28] requires frequent reaching, handling and fingering. SCO, at 132, 203. There are a number of counter attendant positions listed in the DOT.[29] Only one of them, "counter attendant, lunchroom or coffee shop (hotel & rest.)", is light work with an SVP 2. SCO, at 365–67. However, it requires frequent reaching and handling and only occasional fingering. SCO, at 365. "Paramutual-ticket checker" [30] requires constant reaching, handling and fingering. SCO, at 340. Thus, even when the hypothetical clearly mirrored the DOT categories limiting the claimant to occasional hand use, the VE suggested positions that require frequent and constant hand use, creating an unexplained conflict.

### ALJ's Reliance on the VE's Testimony at Step Five

■ At step five of the sequential evaluation process, the Commissioner has the burden to demonstrate that there are jobs that the claimant can perform. Citing the VE's testimony, the ALJ concluded that there were a significant number of jobs existing in the national economy that the claimant could perform. In other words, the VE's testimony essentially carried the Commissioner's burden. Therefore, if it was faulty, the ALJ's reliance on it undermines her conclusion.

What the ALJ meant when she used the word "repetitive" in her hypothetical is uncertain. More importantly, the VE never explained how she interpreted "repetitive" in the context of the hypothetical. Although the SCO does not indicate whether or not each job requires repetitive hand use, the VE may have interpreted this term within the context of the DOT/SCO; and, if she did so, she did not explain how. Without an understanding of what the ALJ and the VE both meant by "repetitive" and not knowing if they shared the same definition, meaningful review is not possible. Hence, I cannot determine whether the VE's testimony constituted substantial evidence to support the ALJ's determination at step five.

### Conclusion

Despite SSR 00–4p's directive, the ALJ did not ask the VE if her testimony conflicted with the DOT. Consequently, the apparent conflicts between the DOT and SCO job descriptions and the VE's testimony concerning exertion levels and hand use went unexplained. Given the uncertainty created by the ALJ's hypothetical and the apparent unresolved conflicts between the VE's testimony and the job classifications provided in the SCO, the VE's testimony does not constitute substantial evidence to support the ALJ's conclusion that the claimant was not disabled.

---

27. "Cleaner, Housekeeping (any industry)" DOT code 323.687–014. SCO, at 132.

28. "Potato–Chip Sorter (food prep, nec.)" DOT code 526.687–010. SCO, at 203.

29. They include "Counter attendant (laundry & rel.; personal ser.)" or "service-establishment attendant (laundry & rel.; personal ser.)" (DOT code 369.477–014); "counter attendant, cafeteria (hotel & restaurant)" (DOT code 311.677–014); and "counter attendant, lunchroom or coffee shop (hotel & rest.)" (DOT code 311.477–014). SCO, at 365–67.

30. "Paramutual-ticket checker (amuse & rec.)" DOT code 219.587–010. SCO, at 340.

The ALJ's finding that there were a significant number of jobs in the national economy that the claimant could perform is not based on substantial evidence. In all other respects, the ALJ's findings are supported by substantial evidence. Therefore, I shall remand to the Commissioner for the taking of testimony from a vocational expert.

### ORDER

**AND NOW,** this 23rd day of March, 2006, upon consideration of Plaintiff's Motion for Summary Judgment or, in the Alternative, Plaintiff's Motion for Remand (Document No. 11), the Defendant's Motion for Summary Judgment (Document No. 12), the Report and Recommendation of United States Magistrate Judge Charles B. Smith (Document No. 15), the Plaintiff's Objections to the Report and Recommendation of the Magistrate Judge (Document No. 16), and after oral argument and a thorough and independent review of the record, it is **ORDERED** as follows:

1. The plaintiff's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART.**

2. The defendant's motion for summary judgment is **DENIED.**

3. This case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.